IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY K. ORCUTT, | Cause No. CV 16-155-BLG-SPW-TJC |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| STATE OF MONTANA; ATTORNEY GENERAL, | |
| Respondents. | |

This case comes before the Court on Petitioner Tracy Orcutt's application for writ of habeas corpus under 28 U.S.C. § 2254. Orcutt is a state prisoner proceeding pro se.

Orcutt challenges convictions for Criminal Production or Manufacture of Dangerous Drugs and Criminal Possession of Dangerous Drugs with Intent to Distribute, handed down on July 1, 2014, in Montana's Seventh Judicial District Court, Dawson County ("State District Court"), following pleas of nolo contendere. (Doc. 2 at 1; Doc. 9-18 at 6-8). Orcutt was sentenced to ten years with the Montana Department of Corrections on each count, with five of the years suspended. The two sentences were ordered to run concurrently. (Doc. 9-20 at 2-3). Mr. Orcutt has been paroled, and although he remains under supervision, he is

1

not currently incarcerated.[1]

## I. Procedural History

In his petition pending before this Court, Orcutt mentions only one set of charges that were pending against him in Dawson County. Orcutt does not include the fact that there were also two other separate felony matters pending against him during the same time frame. Because it is helpful to understanding Orcutt's claims in his federal petition, particularly his central claim that counsel Penelope Strong provided ineffective assistance, the state court proceedings are detailed below.

### a. Underlying Criminal Cases

In July of 2012, following an investigation that spanned more than six months, Orcutt was charged with three felonies stemming from a marijuana grow-operation located on Orcutt's property. (Docs. 9-4; 9-6) (Cause No. DC-12-057). Count II, which originally alleged the Operation of an Unlawful Clandestine Lab, was later amended to a charge of Criminal Possession of Dangerous Drugs (methamphetamine). (Doc. 9-9 at 2).

After this first set of charges, Orcutt was charged in a second action with Driving Under the Influence and Criminal Possession of Dangerous Drugs (methamphetamine), following a traffic stop on September 25, 2012. (Doc. 9-10)

---

[1] See, Montana Correctional Offender Network:
https://app.mt.gov/conweb/Home/OffenderNumber/47292 (accessed June 13, 2017).

(Cause No. DC-12-105).

On August 9, 2013, the State, with the consent of defense counsel, filed a motion in the trial court to mediate the two separate felony cases. (Doc. 9-92). The State District Court granted the motion for mediation, and jury trials that had been set for late August 2013 were vacated. (Doc. 9-93).

Prior to the mediation, however, Orcutt was charged in a third matter. Apparently, while attempting to serve a warrant on another individual at Orcutt's residence on September 19, 2013, officers observed marijuana plants growing inside a building on Orcutt's property. A search warrant was obtained and the plants were seized. Orcutt was charged with Criminal Production or Manufacture of Dangerous Drugs. (Doc. 9-15) (Cause No. DC-13-097).

A mediation was ultimately held on January 28, 2014 in an effort to resolve all three of Orcutt's outstanding felony cases. Mr. Orcutt was represented at the mediation by two separate attorneys, Penelope Strong and Alison Moulton.[2] (Doc. 9-97 at 1). An apparent resolution was reached at the mediation as to the pending cases, but it appears Mr. Orcutt did not follow through with the agreement at a change of plea hearing held on January 31, 2014. (Docs. 9-98 at 1; 9-18 at 3). Nevertheless, a second change of plea hearing was held on February 25, 2014, at

---

[2] Ms. Strong was retained counsel for Mr. Orcutt on Cause Nos. DC 12-057 and DC 12-105 (Docs. 9-107 and 9-108); Ms. Moulton was appointed counsel for Mr. Orcutt in Cause No. DC 13-097 (Doc. 9-109).

which time Mr. Orcutt entered nolo contendre pleas to Count I and Count III of
Cause No. DC-12-057. (Doc. 9-18 at 7-8). Pursuant to the agreement, the State
moved to dismiss Count II in Cause No. DC-12-057 (*id*. at 11) and the other two
matters, DC-12-105 and DC-13-097, in their entirety. (Docs. 9-103; 9-105).
Additionally, a persistent felony offender designation was withdrawn. (Doc. 9-19
at 3, ¶ 2b).

Consistent with the colloquy that occurred during the change of plea
hearing, Orcutt signed and executed an Acknowledgment and Waiver of Rights
and Plea Agreement. (Doc. 9-19). Orcutt was sentenced on July 1, 2014. (Doc. 9-
20).

### b. Sentence Review Proceedings

On July 17, 2014, and August 14, 2014, Orcutt filed applications for review
of his sentence with the Sentence Review Division of the Montana Supreme Court.
(Docs. 9-22; 9-23 at 1). Mr. Orcutt's initial petitions were dismissed without
prejudice in November of 2014, because he had a petition for postconviction relief
pending before the trial court. (Doc. 9-26). Mr. Orcutt was represented by counsel
at a subsequent hearing before the Sentence Review Division held on February 5,
2015. His sentence was affirmed. (Doc. 9-29).

### c. Initial Petition for Postconviction Relief

On November 3, 2014, Orcutt filed a petition for postconviction relief in

4

State District Court. He alleged, among other things, that he was actually innocent of the charges of which he was convicted, and his attorney should have investigated his innocence (Doc. 9-58 at 20, 28-30); that the prosecutor engaged in misconduct by intimidating a witness (*id.* at 15, 21, 24); and that Strong had provided ineffective assistance. His claims of ineffective assistance included the allegation that Strong failed to file a direct appeal upon his request. *Id.* at 18, 31. The trial court ordered Strong to respond to that specific allegation. (Doc. 9-57).

In her response, Strong produced correspondence she sent to Orcutt following his sentencing hearing. (Doc. 9-59 at 3). In the letter, Strong explained that she did not see any valid basis for appeal, but would file one on Orcutt's behalf if he desired. *Id.* Orcutt apparently responded by indicating that he wished to pursue relief with the Sentence Review Division, and Strong provided the requisite form and filed it with the Division on his behalf. *Id.* at 1-2.

In a written order filed on November 28, 2014, the State District Court addressed Orcutt's claims. The Court preliminarily noted that any claims based upon counsel's ineffective performance for failure to investigate, or challenges for other pre-trial issues, were waived when Orcutt entered his pleas of nolo contendere. (Doc. 9-60 at 3). In such a situation, the only question to examine is whether or not a plea is entered voluntarily. *Id.* The Court found the record supported a finding that Orcutt's plea was knowing and voluntary. *Id.* at 4.

5

In relation to his claim that the prosecutor threatened a witness, the Court found that whether true or not, the allegation would not have changed the outcome of Orcutt's case. (Doc. 9-60 at 3).

With respect to Orcutt's post-plea allegations, the Court found that Ms. Strong had discussed Orcutt's appellate rights with him before and after sentencing; that she sent him a letter advising Orcutt of his right to appeal; that in her professional judgment she did not see a ground for appeal; and that she applied for a review of Orcutt's sentence upon his request. *Id.* at 4. Orcutt's petition was denied as frivolous. (Doc. 9-60).

It does not appear that Orcutt ever filed an appeal from the denial of this petition for postconviction relief.

### d. Motion to Compel the Production of Evidence and Appeal

On May 22, 2015 and May 28, 2015, Orcutt filed documents in the State District Court seeking to compel the production of his case file and all the documents contained therein. (Docs. 9-30, 9-31, 9-32, and 9-33). The State and defense counsel Strong both responded to Orcutt's motions to compel. (Docs. 9-35 and 9-36). Ms. Strong's response indicated that she was re-sending case materials to Orcutt, despite the fact that they had already all been previously provided. On June 22, 2015, the State District Court denied Orcutt's motion. (Doc. 9-37).

Orcutt appealed the State District Court's denial of his motion to compel.

See, *State v. Orcutt*, DA 15-0418, Not. Of Appeal (filed July 14, 2015).[3] Orcutt

voluntarily moved to dismiss his appeal on September 9, 2015. The matter was

subsequently dismissed. *State v. Orcutt*, DA 15-0418, Or. (Mont. Sept. 14, 2015).

### e. Second Petition for Postconviction Relief/Appeal

Orcutt submitted a second petition for postconviction relief in State District

Court on August 17, 2015, but failed to include the requisite filing fee, affidavit,

and corresponding documents. The document was not filed. See, (Doc. 9-63 at 1).

On September 18, 2015, Orcutt filed an Amended Second Petition for

Postconviction Relief in State District Court. (Doc. 9-62). In his petition, Orcutt

argued that he had "newly discovered evidence" – consisting of Montana law that

was in effect at the time of his offenses – and that he was actually innocent. *Id.* at

3-10. Orcutt also again argued that his trial counsel was ineffective for: failing to

investigate his potential innocence under state law (*id.* at 15-16); failing to file a

motion to suppress and challenge information provided to law enforcement (*id.* at

16-24); failing to file a direct appeal (*id.* at 24-27); and failing to object to a pre-

sentence investigation report (*id.* at 27-28). Orcutt also advanced claims of

prosecutorial misconduct and judicial bias. *Id.* at 42- 43.

In its Order denying his motion, the State District Court found Orcutt's

---

[3] All state court briefing and decisions are available at:
https://supremecourtdocket.mt.gov/search/ (accessed June 13, 2017).

petition to be conclusory and lacking evidentiary support. (Doc. 9-63 at 2). The Court also noted that Orcutt took full advantage of his plea agreement, and in so doing, he waived any defects or claims that arose prior to the entry of his plea. *Id.* at 3. The Court observed that Orcutt entered his plea voluntarily, understood the constitutional rights he would be waiving, agreed with the factual basis for his plea, and acknowledged that he was satisfied with his attorney's performance. *Id.*

Orcutt appealed the dismissal of his Amended Second Postconviction Petition. *Orcutt v. State*, DA 15-0648, 2016 MT 260N, Not. (filed Oct. 23, 2015). The Montana Supreme Court determined that the grounds for relief advanced in Orcutt's second petition either were, or reasonably could have been, raised in his original petition; thus, the State District Court did not err in dismissing Orcutt's petition. *Orcutt v. State*, DA 15-0648, 2016 MT 260N, Or. (Mont. Oct. 11, 2016).

### f. Motion to Withdraw Nolo Contendere Plea

On July 1, 2015, Orcutt filed a Motion to Withdraw Nolo Contendere Plea in the State District Court.[4] In his motion, Orcutt advanced claims of actual innocence (Doc. 9-39 at 2-9.), ineffective assistance of counsel (*id.* at 9-22), prosecutorial misconduct (*Id.* at 22-23), and judicial bias (*id.* at 23). The State

---

[4] Because Orcutt had appeals pending on the "Motion to Compel Production of Evidence" and the Amended Second Petition for Postconviction Relief before the Montana Supreme Court, the State District Court did not have jurisdiction to rule on the merits of Orcutt's motion to withdraw his plea until the second of his appeals was resolved on October 11, 2016.

8

responded to Orcutt's motion. (Doc. 9-40).

In denying his motion, the State District Court examined the record to determine whether good cause existed under state law to allow Orcutt to withdraw his plea. The Court noted that it was to engage in "case specific considerations," including looking to the adequacy of the plea colloquy itself, the benefit Orcutt obtained from the plea agreement, and the timing of the motion to withdraw. (Doc. 9-54 at 6, citing *State v. Garner*, 377 Mont. 123, ⁋26). The State District Court further observed that, in order to be accepted, a plea must be "voluntary, knowing, and intelligent," and cannot be induced by "threats, misrepresentation, or improper promises." *Id.*

The State District Court reviewed the colloquy from the February 25, 2014 change of plea hearing, and observed: Orcutt was present with both of his attorneys; he indicated he had no mental or emotional problems that made understanding the proceedings difficult; he advised that he had reviewed the Acknowledgment and Waiver or Rights and Plea Agreement with his attorneys prior to signing it; and that he understood the document and was not forced to sign it or promised any benefit, but rather did so voluntarily. *Id.* at 6-7. The Court also noted that, aside from plainly being advised of all of the rights he would be waiving in the written form that was filed, he was also advised of the same verbally in open court. *Id.* at 7-8. Orcutt indicated that he understood all of the

9

rights he would be giving up and the direct consequences of his plea.

The Court went on to observe that all of the information Orcutt sought to present at a new trial was available to him prior to his decision to enter into a plea. *Id.* at 8. The Court noted that Orcutt had full knowledge of all of the evidence he would be relinquishing when he chose, voluntarily and knowingly, not to proceed to trial. Because he was aware of the direct consequences of his plea, he understood the corresponding waiver of both statutory and constitutional rights.

The State District Court then looked to the benefit that Orcutt received, and the actions that Orcutt's counsel took on his behalf. The Court observed that Orcutt received a substantial reduction in charges as a direct result of the work performed on his behalf, which included "having the Operation of an Unlawful Clandestine Lab amended to Criminal Possession of Dangerous Drugs and later having that charge be dismissed, withdrawing the persistent felony offender notice filed under DC 12-105, and having DC 13-097 dismissed with prejudice." *Id.* at 8-9.

The State District Court determined that the claims of dissatisfaction with trial counsel were undermined by Orcutt's own assertions that he was satisfied with his attorney's representation. *Id.* at 9. Further, Orcutt failed to provide proof that his attorney's representation was deficient. The Court found the allegations of ineffective assistance were "not believable to [the Court] and have been ruled upon

10

in the two previous Petition[s] for Post-Conviction Relief." *Id.* at 9.

The State District Court additionally found that the timing of Orcutt's motion to withdraw to be unreasonable. Further, the Court found that Orcutt failed to provide any evidentiary support for his claims of prosecutorial misconduct or judicial bias. *Id.* at 9. The Court noted that a land use agreement and an allegedly exculpatory video could have been presented at trial, but found once Orcutt waived his right to proceed to trial, he waived the ability to present this evidence to establish his innocence. *Id.*

In sum, the State District Court concluded that it would not allow for Orcutt "to have his cake and eat it too." *Id.* at 10. The Court said:

> After receiving a sentence he was not satisfied with, [Orcutt] has proceeded to file multiple frivolous claims with this Court to get out of the plea agreement he voluntarily, knowingly, and intelligently entered. With that in mind, [Orcutt] has failed to show good cause that would justify a withdrawal of his nolo contendere plea pursuant to §46-16-105(2), MCA.

*Id.* at 10.

## II.  Orcutt's Claims

In Orcutt's present petition before this Court, he advances claims of "actual innocence" under the state medical marijuana laws in place at the time of his offense (Doc. 2 at 5), ineffective assistance of counsel (*id.* at 7), and prosecutorial misconduct (*id.* at 8).

Orcutt was previously advised that the allegations he raised in his petition

11

were inadequate to support further proceedings. (Doc. 3). He was directed to state why he believed he was entitled to relief, and relate the true facts that he believed supported his claim of actual innocence. *Id*. at 2. In addition, it was explained to Orcutt that he needed to describe what occurred with his counsel in relation to her alleged refusal to file an appeal, or her purported failure to understand or apply state law to his case. *Id*. Relative to his prosecutorial misconduct claim, Orcutt was told he needed to identify the witness that the prosecutor allegedly threatened, and explain what the witness would have said in support of Orcutt's defense. *Id*. at 2-3. Further, Orcutt was ordered to explain what evidence was withheld and why he believed it to be exculpatory. *Id*. at 3. Orcutt timely responded. (Doc. 4).

## III. Analysis

For the reasons set forth below, Orcutt's petition should be denied on its merits.

### a. Actual Innocence

Orcutt's claim of actual innocence has not been recognized by the U.S. Supreme Court in federal habeas proceedings. *House v. Bell*, 547 U.S. 518, 555 (2006). "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "Newly discovered evidence . . .

12

alleged in a habeas application . . . must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Id.* "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.*[5]

While the Supreme Court has never affirmatively recognized such a claim, the Ninth Circuit has acknowledged one exception to the rule "when a defendant introduces affirmative proof of actual innocence based on newly discovered evidence." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002). In order to fall under the exception, however, the petitioner must "affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997).

Orcutt has not alleged an independent constitutional violation in connection with his actual innocence claim. He has also not presented affirmative proof of his innocence with newly discovered evidence so as to come under the Ninth Circuit's exception to the rule. For factual support of the claim, Orcutt merely cites to the Montana medical marijuana statutes. (Doc. 2 at 5.) This does not constitute

---

[5] A petitioner may attempt to establish factual innocence in order to show that a fundamental miscarriage of justice would result from application of a procedural default. See, *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995). But that is not what Orcutt attempts to do in this petition; procedural default is not at issue in this case.

affirmative proof of his innocence, and Montana statutory law in effect at the time

of his offenses certainly does not constitute newly discovered evidence. [6]

## b. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by *Strickland v.*

*Washington*, 466 U.S. 668 (1984). In order to prevail, a petitioner must (1)

establish that counsel's performance was deficient, *i.e.*, that it fell below an

"objective standard of reasonableness" under prevailing professional norms, *id.* at

---

[6] It also appears that Orcutt's theory of innocence, and corresponding interpretation of the Montana state medical marijuana laws, has shifted over time. For example, it appears that Orcutt now argues that he was not cooperatively growing medical marijuana with Joe Black or Val Scarcia at the time of his arrest in 2012, but only allowed Joe Larson to grow marijuana on his property pursuant to a purportedly valid land use agreement. (*See* Doc. 4 at 1-2). But following his sentencing hearing, Orcutt seemed to agree with the idea of a cooperative marijuana grow operation on his property, which included Mr. Black, Mr. Larson, and the "soon to be included as a provider" Mr. Scarcia. See, Letter dated June 13, 2014 (Doc. 9-23 at 2). This cooperative nature finds support in the letter Joe Black provided to the State District Court wherein he states that he, Orcutt, and Joe Larson, a licensed medical marijuana provider, were all working together. (Doc. 10-2 at 34). Also, of note, Joe Black's letter, contrary to Orcutt's assertions in this Court, does not reveal that he ceased being a provider and/or growing marijuana in the winter of 2011. Compare (Doc. 10-2 at 34) with (Doc. 4 at 2). Also, Orcutt explained the nature of his offense to the presentence investigator as having "associated with individuals who had crossed purposes to my intent; I was growing my legal amount of medicine and *was allowing others* to grow with me obviously not all went well." (Doc. 10-1 at 5)(emphasis added). Finally, in his first postconviction petition, Orcutt argued that in accordance with the applicable law in July 2012, Orcutt (as a medical marijuana patient) and Joe Black and Joe Larson, as Care Providers, were lawfully growing 60 plants and were in the process of getting Val Scarcia licensed as a Care Provider and his wife, Victoria, registered as a medical marijuana patient. (Doc. 9-58 at 20).

687-88; and, (2), establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 690). It is unnecessary for a federal court considering an ineffective assistance of counsel claim on habeas review to address prejudice under the second prong of the *Strickland* test if the petitioner cannot establish incompetence under the test's first prong. *Hendricks v. Calderon*, 70 F. 3d 1032, 1039 (9th Cir. 1995).

Orcutt asserts that Strong performed ineffectively in representing him, particularly in pressuring him to accept a plea agreement, while simultaneously failing to research Montana's medical marijuana laws, investigate the case and file a subsequent appeal. A review of the state court record and the documents filed with this Court reveals that Orcutt cannot establish Strong's performance was ineffective, and thus, cannot meet the first *Strickland* prong.

By focusing simply on the medical marijuana claim in his petition, Orcutt neglects to address the other charges that he was facing. When looking at the entire picture, however, it appears clear that Strong provided reasonable assistance.

15

First, despite Orcutt's denial, there was a Notice of Persistent Felony Offender filed against him. This is confirmed by one of Orcutt's own submissions. See, (Doc. 12-2 at 18, ¶21). Additionally, Strong filed a motion to strike the persistent felony offender designation, which was opposed by the State and denied by the trial court. See, (Doc. 9-2 at 2, Doc. Seqs. 16, 18, and 23). As part of the ultimate plea agreement, however, Strong was able to have this designation removed. This was a significant achievement. Under Montana's persistent felony offender provisions, Orcutt was subject to a term of imprisonment in the Montana State Prison for a term of "not less than five years or more than 100 years." See, Mont. Code Ann. §46-18-502 (2013).

In addition to removal of the persistent felony offender designation, Strong was also able to negotiate the dismissal of Cause Nos. DC 12-105 and DC 13-097, two separate felony cases, in their entirety. She also successfully sought to have the charge of Operation of a Clandestine Lab amended to Criminal Possession, and then ultimately dismissed. See, (Doc. 9-18 at 6, 11). She also negotiated with the State not to oppose the entry of nolo contendere pleas, versus pleas of guilty, to the two remaining charges, and negotiated to have the State remain silent at the time of sentencing. The success of Strong's performance is further highlighted by the fact that the Presentence Investigator made a recommendation to the Court to impose two consecutive 10-year prison sentences with no time suspended. (Doc. 10-1 at

16

9). The ultimate sentence Orcutt received, ten-year concurrent commitments to the Montana Department of Corrections, with five-years suspended on each count, was much more lenient than the sentence which was recommended.

Orcutt has also not demonstrated that Strong failed to adequately investigate his case, including the potential application of Montana law. But even if he were able to make such a showing, he still cannot demonstrate that Strong's actions were unreasonable; it appears she made a strategic decision as how to best represent her client given the totality of the charges he was facing. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. The relevant inquiry, therefore, is not what Strong could have done, but whether her actions were reasonable. *Babbit v. Calderon*, 151 F. 3d 1170, 1174 (9th Cir. 1998). Here, the record shows that not only were Strong's actions reasonable, the result she was able to obtain for Orcutt was exceptional.

Additionally, the remaining claims that Orcutt advances relative to Strong's

17

performance are all plainly defeated by the record. Orcutt seems to allege, for example, that Strong attempted to extort an additional payment of $10,000 from him when he stated he wanted to go to trial, and an additional $2,000 fee when he was charged in a separate felony case. See, (Doc. 4 at 3). But the fee agreement Orcutt entered into required that if the matter proceeded to trial, an additional deposit of $10,000 was to be paid to Strong 90 days prior to trial. (Doc. 9-31 at 13). Moreover, it was not unreasonable for Strong to obtain an additional fee from Orcutt after he obtained new felony charges. As Strong noted, she agreed to represent him for a significantly reduced rate on those charges. *Id.* at 9.

Finally, Orcutt's claim that Strong refused to file a direct appeal, which was addressed by the State District Court during postconviction proceedings, see (doc. 9-60 at 4), also fails. Orcutt requested Strong file "an appeal to the Montana Supreme Court for a sentence review." (Doc. 9-23 at 2). Strong did exactly as requested. The proper documents were filed and Orcutt had a hearing in front of the Sentence Review Division. His sentence was affirmed. (Doc. 9-29).

In short, Orcutt has not met the first prong of Strickland by showing the Strong's performance was deficient. Therefore, this Court need not determine whether or not prejudice ensued. *Hendricks,* 70 F. 3d at 1039. Orcutt entirely fails to meet his burden under *Strickland* as to any of the claims of ineffective assistance of counsel he attempts to advance.

18

### c. Prosecutorial Misconduct

As set forth above, Orcutt was instructed to provide the Court with additional details to support his claim of prosecutorial misconduct. Orcutt has failed to do so, and this claim, too, should be denied for lack of merit.

### i. Witness intimidation

In his response to this Court's order, Orcutt appears to maintain that he entered into a land use agreement with Val Scarcia as a result of the "Deputy Prosecutor send[ing] a letter to Mr. Scarcia threatening him with prosecution if he didn't come to his office and tell him what would be the [gist] of his testimony on my behalf . . . ." (Doc. 4 at 2). Orcutt also states that this leads him to believe that Scarcia then entered into an agreement with the prosecution to "establish a reason" for Orcutt's future arrest.[7] *Id.*

Despite this Court's directive (Doc. 3 at 2-3), Orcutt has not explained what Scarcia would have said in his defense, or how the prosecutor threatened Scarcia. Nor has Orcutt explained how the prosecutor acted improperly, and how this misconduct infected the proceedings to render them fundamentally unfair. *Drayden v. White*, 232 F. 3d 704, 713 (9th Cir. 2000). Simply requesting that an individual present for an interview does not constitute an improper threat. Also, Orcutt's

---

[7] Presumably Orcutt is referencing Cause No. DC-13-097. Val Scarcia was the individual upon whom authorities were attempting to serve a warrant when they discovered marijuana growing for a second time on Orcutt's property.

19

conclusion that Scarcia must have entered into some agreement with the State, which is supported by nothing more than Orcutt's own speculation, does not render the proceedings against Orcutt fundamentally unfair. Orcutt's claim is plainly lacking in merit.

### ii.    Withholding of evidence

Orcutt alleges that the prosecution also committed misconduct by suppressing evidence. Specifically, Orcutt claims the following was suppressed: a land use agreement between Orcutt and Joe Larson; new patient and doctor recommendation forms; a copy of an audio interview between Orcutt and Agent Kurkowski wherein the agent allegedly acknowledged knowing a meth lab was "planted" on Orcutt's property; and a video tape from Orcutt's home security monitor showing the alleged planting of the meth lab. (Doc. 4 at 3).

"The suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To prevail on a *Brady* claim, a petitioner must show: (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) it was material, meaning prejudice ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Evidence is material if "there is a

20

reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different." *Cone v. Bell*, 556 U.S. 448, 469-70 (2009).

The State indicated that it provided ten separate batches of discovery to Orcutt through counsel. (Doc. 9-34 at 3 and 5-24)(itemizing each set of materials provided to Strong). Ms. Strong stated that Orcutt was timely provided with all copies of pleadings, correspondence, discovery and investigative matters, and that he was provided a second copy of these materials post-sentencing. (Doc. 9-35 at 1).

As a preliminary matter, Orcutt has not demonstrated that the material he seeks is favorable under the first prong of the *Brady* test. He has provided no explanation as to how these items would have exculpated him. Orcutt also has failed to establish that the materials were actually suppressed by the prosecution. All Orcutt has provided to this Court are his conclusions that the state must have withheld information from him. Conclusory allegations lacking support by a specific statement of facts do not warrant habeas relief. *Jones v. Gomez*, 66 F. 3d 199, 204-5 (9th Cir. 1995). This claim, too, should be denied as meritless.

### IV. Conclusion

Orcutt's petition should be denied. Orcutt has not made a convincing showing of innocence, and the claim is not cognizable in habeas. Orcutt's claims

of ineffective assistance of counsel and prosecutorial misconduct are conclusively lacking in merit.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Orcutt has not made a substantial showing that he was deprived of a constitutional right. There are no close questions and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (Doc. 2) should be DENIED for lack of merit.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

22

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Orcutt may object to this Findings and Recommendation within 14 days.[8] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Orcutt must <u>immediately</u> notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 21st day of August, 2017.

Timothy J. Cavan
United States Magistrate Judge

---

[8] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.